UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| DAVID A. EASTWOOD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO. 3:12-cv-00435-CAN |
| ) | |
| CAROLYN W. COLVIN ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant, ) | |

**OPINION AND ORDER**

On August 14, 2012, Plaintiff David Eastwood ("Eastwood") filed a complaint in this Court requesting reversal and remand of the decision of the Commissioner denying Social Security Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). On March 21, 2013, Eastwood filed his opening brief, and on May 28, 2013, Defendant Acting Commissioner of Social Security, Carolyn W. Colvin ("Commissioner") responded. Eastwood filed a reply brief on September 6, 2013. This Court may enter a ruling in this matter based on the parties' consent. 28 U.S.C. § 636(c); 42 U.S.C. § 405(g).

**I.  PROCEDURE**

On March 16, 2010, Eastwood filed a Title II application for DIB and a Title XVI application for SSI, alleging limited use of his right arm from his rotator cuff tear and loss of memory, lack of coordination, and limited use of his right arm due to strokes. Eastwood alleged a disability onset date of January 23, 2010. His claims were initially denied on June 9, 2010, and upon reconsideration on August 26, 2010. Eastwood appeared at a hearing before an administrative law judge (ALJ) on April 11, 2011.

On May 26, 2011, the ALJ issued a decision that Eastwood was not disabled, as defined in the Social Security Act, from January 23, 2010, through the date of the decision. Eastwood requested review by the Appeals Council on July 5, 2011, and the request was denied on June 14, 2012, making the decision of the ALJ the final decision of the Commissioner of Social Security. *See Fast v. Barnhart,* 397 F.3d 468, 470 (7th Cir. 2005); 20 C.F.R. §§ 404.981; 416.1481.[1]

## II. ANALYSIS

### A. Facts

Eastwood was 52 years old at the alleged onset date and 54 years old on the date of the ALJ decision. He is a high school graduate with one year of college. He also completed truck driving school. His past relevant work was as a semi-truck driver.

On January 22, 2010, Eastwood went to the emergency room after he felt a pop in his right shoulder, accompanied with pain. Doctors diagnosed him with a rotator cuff tear, and Eastwood was sent home. The following day on January 23, 2010, Eastwood went to the emergency room after he experienced prolonged periods where he could not concentrate and he was dizzy. Eastwood was admitted to the hospital, and doctors determined he had suffered from a stroke. Doctors also diagnosed him with chronic airway obstruction; an abnormally large opening in the atrial septum; hardening of the arteries; tobacco use disorder; alcohol abuse; mitral valve disorder; a rotator cuff sprain; and a personal history of a transient ischemic attack [2]

---

[1] The regulations for Title II and Title XVI are codified separately within the Code of Federal Regulations, but their terms are the same. Thus, this opinion will reference only 20 C.F.R. § 404.1520 *et seq.*

[2] A transient ischemic attack produces the same symptoms as a stroke, but usually involves no permanent damage. MAYO CLINIC, http://www.mayoclinic.org/diseases-conditions/transient-ischemic-attack/basics/definition/CON-20021291.

2

and cerebral infarction. Eastwood was discharged from the hospital on January 30, 2010.

On February 8, 2010, Eastwood was admitted to the hospital complaining of severe dizziness, slurred speech, and numbness in the right side of his body. He was diagnosed with a cerebral artery occlusion with infarction, hemiplegia, shoulder joint pain, hyperlipidemia, anemia, and a personal history of transient ischemic attack and cerebral infarction without residual deficits.[3] Eastwood returned home from the hospital on February 13, 2010.

Eastwood was hospitalized again on November 29, 2011, through December 2, 2011, with complaints of increased weakness and numbness in his right arm and "hazy" mental functioning. (Tr. 634). Doctors determined that he possibly could have suffered stroke, and Eastwood was released from hospital care on December 2, 2011.

Eastwood alleges he has limited use of his right arm from his rotator cuff tear, loss of memory, lack of coordination, and limited use of his right arm due to his stroke. He also complains that he experiences frequent headaches and becomes tired easily, having to take multiple naps a day.

### 1. Claimant's Hearing Testimony

During the ALJ hearing, Eastwood testified that he was discharged from his job as a semi-truck driver when his company would no longer allow him to drive due to his risk of strokes. He stated that he no longer worked but that he had a job as a clerk at a tobacco store for a week in the summer of 2010. Eastwood recalled that the store quickly discharged him because he was not able to process information fast enough to work a check-out counter.

---

[3] Hemiplegia is the total or partial paralysis of one side of the body because of injury or illness to the motor centers of the brain. MERRIAM WEBSTER, http://www.merriam-webster.com/medical/hemiplegia; Hyperlipidemia is excess fat in the blood. MERRIAM WEBSTER, http://www.merriam-webster.com/medical/hyperlipidemia.

Eastwood reported that he is able to get out of bed on his own in the morning and make a small breakfast. He said that he lives with his mother who has a full time caretaker for her own use. Eastwood testified that the caretaker usually cooks enough for his mother and himself. He also said that the caretaker cleans around his home. Eastwood reported that he does his own laundry, but he said that if he has to do more than one load at a time he often forgets to finish it.

Eastwood testified that he gets short of breath and that he smokes a pack of cigarettes about every two or three days. He reported that he is unable to walk from the basement to the second floor of his house without a rest. He testified that he has constant pain in his right shoulder and numbness in his right arm all the way to his fingertips. Eastwood also reported that his right hand hurts when he writes and that he is unable to pick up coins from a table. He alleged that he could not use his right hand to carry a gallon of milk without dropping it. Eastwood further testified that he is able to drive. He estimated that he could drive from his home in Indiana to Nebraska with the help of a GPS device.

Eastwood reported that he has constant pain in his head every day. He alleged that he experiences anxiety where he feels "jumpy." (Tr. 60). He reported that he is unable to sit for prolonged periods of time because his leg cramps. Eastwood testified that he does not think he could stand for eight or six hour work-days.

### 2. Vocational Expert Hearing Testimony

At the April 11, 2011, hearing, the ALJ asked the Vocational Expert ("VE") whether an individual who was Eastwood's age with the same work experience and level of education could perform light work that did not require climbing ladders, ropes, or scaffolds, and could only occasionally balance. The ALJ's hypothetical claimant also could not reach overhead with his

right hand and could perform no more than a gross manipulation with his right hand. The VE testified that this hypothetical individual could perform work as a rental consultant, page or guide, or wire machine prep operator. The VE further testified that if the ALJ's hypothetical claimant could perform frequent gross manipulation, this hypothetical claimant could work as a power driver operator or a labeler. The VE reported that the all of these jobs he mentioned involved simple, routine, and repetitive tasks.

### 3. Medical Evidence

Eastwood saw Dr. Arora, after his two hospital stays in 2010. He continued to have pain in both his limbs and his right shoulder. Dr. Arora performed a nerve condition study on the left and right side of his upper extremities, which determined that Eastwood's nerve condition was within normal limits. He saw Dr. P. Kalokhe, a neurologist, in May and August of 2011, for pain and physical limitations due to his rotator cuff tear, Dr. Kalokhe who recommended aspirin to help with the pain.

In February 8, 2011, Eastwood saw Dr. David Harris, an orthopedic doctor, under the recommendation of Dr. Rosenberg, his family physician, because of continued pain his right shoulder. The pain had reached a level of five on a five point scale. He saw Dr. Harris again on March 17, 2011, who reviewed an MRI that was taken on February 8, 2011. The MRI revealed that Eastwood had AC joint osteoarthritis, high-grade partial thickness tearing of the infraspinatus, subacromial bursitis, and superior labral fraying and tearing. At this appointment, Dr. Harris gave Eastwood a steroid injection, and he also recommended that Eastwood continue pain treatment with physical therapy.

### 4. **Agency Medical Evidence**

In May of 2010, Eastwood saw Dr. Teofilo Bautista at the request of Social Security. Dr. Bautista recorded that Eastwood experienced numbness in his right arm and hand, which made it difficult for Eastwood to hold a spoon, hold on to objects, and to write neatly. Dr. Bautista also reported that Eastwood was able to button and zip with both hands and was able to pick up coins from a table. Along with numbness in Eastwood's right arm, Dr. Bautista also observed that Eastwood had pain and tenderness in his right shoulder. He further noted that Eastwood had short and long term memory loss, but he mentioned that Eastwood was easily able to recall with reminders. As for Eastwood's physical abilities, Dr. Bautista reported that Eastwood could do light household chores, could walk half a block without getting tired, and could lift forty pounds with his right hand and eighty pounds with his left hand. Dr. Bautista also reported that Eastwood had zero strength on a five-point scale strength in his upper right arm, and that Eastwood was unable to lift his right arm over his shoulder level.

On May 26, 2010, Eastwood saw Dr. R. Bond, a state agency physician, who performed a Physical Residual Functional Capacity Assessment. Dr. Bond found that Eastwood could occasionally lift twenty pounds and frequently carry ten pounds. Dr. Bond also reported that Eastwood could stand for six hours of an eight hour work day as well as sit for six hours in an eight hour work day. He noted that Eastwood could frequently climb stairs, stoop, kneel, and crawl, but he also noted that Eastwood could only occasionally balance and never climb a ladder or scaffolding. Dr. Bond opined that Eastwood's allegations concerning his symptoms were partially credible because Eastwood's condition had improved since his stroke. The state agency physician, Dr. Montoya, reviewed Dr. Bond's evaluation, and affirmed Dr. Bond's conclusions.

On June 8, 2010, Eastwood saw Dr. David Bucur for a psychological evaluation upon the request of the state agency. Dr. Bucur administered a memory test, which revealed that Eastwood functioned at an average level in auditory, visual, immediate, and delay memory, but Eastwood tested in the below average range for his visual working memory. Dr. Bucur reasoned that Eastwood's low scoring in visual working memory indicated that Eastwood had a deficit in encoding, manipulation, and using visual information to perform a task. Dr. Buccur also reported that Eastwood experienced minor interference in memory functioning and that Eastwood was able to compensate for any weaknesses in these areas.

On June 9, 2010, Dr. F. Kladder completed a Psychiatric Review Technique form. Dr. Kladder determined that Eastwood did not suffer from any severe mental impairment. Dr. Kladder also opined that Eastwood was not credible in his allegations of memory loss because these allegations were inconsistent with the results of his memory test.

**5.    Decision of the Administrative Law Judge**

The ALJ first determined that Eastwood had not engaged in substantial gainful activity since January 23, 2010, the alleged onset date. The ALJ identified the severe impairments of degenerative changes to his right shoulder and the effects of two strokes. He also identified the nonsevere impairments of headaches, shortness of breath, and leg pain. The ALJ found that Eastwood's impairments or combination of impairments did not meet or medically equal one of the listed impairments in the Social Security Regulations.

The ALJ concluded that Eastwood had the residual functional capacity ("RFC") to perform light work as defined under 20 C.F.R. § 404.1567. The ALJ determined that Eastwood could lift twenty pounds occasionally and ten pounds frequently. He further noted that

Eastwood could stand or walk for six hours and could sit for six hours of an eight-hour workday. The ALJ also concluded that Eastwood could never climb ladders, ropes, or scaffolds, and could only occasionally balance. He determined that Eastwood was limited to only simple, routine, and repetitive work.

Finally, the ALJ concluded that Eastwood was unable to perform any of his past relevant work, and that given Eastwood's age, education, work experience, and RFC, jobs existed in the national economy in significant numbers that Eastwood could perform. For these reasons, the ALJ made the overall determination that Eastwood was not disabled as defined by the Social Security Act.

**B.    Standard of Review**

The Social Security Administration follows a five-step sequential process in order to determine if a claimant is disabled. 20 C.F.R. § 404.1520. To find disability, the ALJ must determine whether: (1) the claimant is presently employed in substantial gainful activity; (2) the claimant has a severe impairment or combination of impairments that is severe; (3) the claimant's severe impairment meets or equals any severe impairment listed in the regulations; (4) the claimant's residual functional capacity leaves him unable to perform past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351-52 (7th Cir. 2005). The ALJ must answer yes to step three or five in order to find disability. *Id.* at 352. The burden of proof is on the claimant in steps one through four and shifts to the Commissioner at step five. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

The Court will affirm the decision of the ALJ if it is supported by substantial evidence and no legal error exists. 42 U.S.C. § 405(g) (2006). The Court affords *de novo* review to the ALJ's legal conclusions. *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2004). "Substantial evidence" is more than a scintilla; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995). The ALJ must have built a logical bridge from the evidence to the conclusion. *Haynes*, 416 F.3d at 626. A reviewing court must not substitute its own opinion for the ALJ's opinion, and it must not reweigh evidence. *Id*. An ALJ's decision must "sufficiently articulate [his] assessment of the evidence to assure [the reviewing court] that the ALJ considered the important evidence…[and to enable the reviewing court] to trace the path of the ALJ's reasoning." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 2003). An ALJ need not provide a "complete written evaluation of every piece of testimony and evidence." *Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004). An ALJ's decision cannot stand, however, if it lacks evidentiary support or an adequate discussion of the issues. *Id.*

### C. Issues for Review

Eastwood contends that (1) the ALJ's RFC determination is not supported by substantial evidence because the ALJ failed to properly evaluate the medical opinions of Dr. Bond and Dr. Montoya, and (2) substantial evidence does not support that Eastwood is able to perform work in the national economy because the ALJ incorrectly stated Eastwood's moderate limitations in concentration, persistence, and pace in the ALJ's hypothetical to the VE.

**1. ALJ's RFC Determination that Eastwood Could Frequently Grasp**

To make a decision at steps four and five of the five-step disability determination process, an ALJ must make an RFC determination. 20 C.F.R. § 404.1520(a)(4)(iv). An RFC is an administrative assessment of the maximum an individual can do despite the limitations imposed by his medically determinable impairments. 20 C.F.R. § 404.1545(a). In reaching an RFC determination, the ALJ considers all allegations of physical and mental limitations, and bases the assessment on all relevant evidence, such as medical history, reports of daily activities, the effects of treatment, and lay evidence. SSR 96-8p. The ALJ must include a "narrative discussion describing how the evidence supports a conclusion." *Id.*

Eastwood argues that the ALJ did not create a logical bridge between the evidence and his conclusion that Dr. Bond's and Dr. Montoya's opinions that Eastwood could only occasionally handle objects with his right dominant hand was unsupported by the record. Therefore, he alleges that substantial evidence does not support an RFC of light work. First, Eastwood contends that the ALJ's reference to the report showing that Eastwood responded well to pain treatments is not correlated to the opinions of Bond and Montoya because these doctors did not cite pain as a factor as to why Eastwood could only occasionally handle objects in his right hand. Second, Eastwood argues that Bond and Montoya knew of Eastwood's success with pain treatments when they made their determinations. Eastwood contends that the ALJ did not take into account the fact that Eastwood's success with pain treatments was temporary, especially because Eastwood could not afford to continue physical therapy. Lastly, Eastwood argues that although the ALJ found that Eastwood's ability to play computer games, perform house and yard work, and manage daily living were inconsistent of Bond's and Montoya's

conclusions, these activities are compatible with the opinion that Eastwood can only occasionally handle objects.

When an ALJ determines whether a claimant is disabled, the ALJ is not bound to the opinions of the state agency medical experts or other program physicians. 20 C.F.R. 404.1527(e)(2)(i). However, the ALJ will consider state agency medical evidence. *Id*. The ALJ must also explain the weight assigned to the medical expert by considering all factors that could have a bearing on the weight entitled to a state agency physician. SSR 96-6p. These factors include evidence received at the ALJ and Appeals Council levels, the consistency of the medical opinion, or any explanation provided by any physician in the record. *Id*. Also, the ALJ is entitled to weigh state agency medical opinions using stricter standards than those applied to treating source opinions, which are usually entitled to controlling weight. *Id*.

In this case, when the ALJ determined Eastwood's RFC, he gave "considerable weight" to the opinions of State agency medical consultants, Dr. Bond and Dr. Montoya. The ALJ explained his decision citing Bond's and Montoya's expertise and familiarity with regulations as well as their review of Eastwood's record in its entirety. Even so, the ALJ did not adopt Bond's and Montoya's opinions about Eastwood's ability to handle things using his right arm and hand.[4] Bond and Montoya found that Eastwood could handle occasionally with his right arm and hand, meaning that Eastwood could handle objects only up to a third of the time during an eight-hour workday. *See* SSR 83-10. Despite Bond's and Montoya's finding, the ALJ determined that Eastwood could "frequently" use his right hand for purposes of gross manipulation.[5] (Tr. 19).

---

[4] "Handling" is seizing, holding, grasping, turning or working with the entire hand. SSR 85-15.

[5] "Frequent" means occurring up to two-thirds of an eight-hour workday. SSR 83-10. "Gross manipulation" means "handling." *Greenwood v. Barnhart*, 433 F. Supp. 2d 915, 926 (N.D. Ill. 2006).

The ALJ explained that he did not adopt Bond's and Montoya's opinions about Eastwood's ability to grasp because their opinions were not supported by the record. In addition, the ALJ noted that Bond's and Montoya's opinions were inconsistent with Eastwood's testimony as to his abilities with his right arm. The ALJ's explanation is admittedly brief. However, the ALJ is only required to minimally articulate the reasons for adopting or rejecting evidence. *See Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004).

Moreover, the ALJ also relied upon medical evidence to conclude that Eastwood could frequently use his right hand in gross manipulation. The ALJ cited to doctor findings that Eastwood's right shoulder impairment did not inhibit his ability to button and pick up coins. (Tr. 20). The ALJ also noted that doctors found Eastwood responded well to pain treatments, such as Tylenol, steroid injections, and physical therapy for his right shoulder impairment. *Id.* The ALJ further reasoned that after his second stroke, the doctors determined that he was too functional for inpatient rehabilitation. (Tr. 21).

Beyond the medical evidence, the ALJ also cited to Eastwood's own reports that he could drive, shop, play computer games, lift forty pounds with his right hand, and do house and yard work as evidence that would indicate that he had substantial use of his right arm. (Tr. 20). While an ALJ may not rely solely on daily activities to support a claimant's capability, evidence of daily activities may be used when it is combined with objective medical evidence. *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000). Here, the ALJ explained the weight he gave to Dr. Bond's and Dr. Montoya's opinions and also delineated medical evidence and Eastwood's own testimony to support his conclusion that Eastwood was capable of frequent gross manipulation with his right hand. Because the ALJ provided a "logical bridge" for his conclusion, the Court

finds that substantial evidence supports the ALJ's decision to give considerable weight to Dr. Bond's and Dr. Montoya's opinions.[6]

### 2. The RFC stated to the VE at Step Five

At step five of the disability determination process, the ALJ uses the claimant's RFC, age, education, and experience in conjunction with the Medical Vocational Guidelines, which provides a grid that directs an ALJ's decision as to whether a claimant is disabled. 20 C.F.R. Part 404, Subpart P. App. 2 at § 200.000(a). If, however, one of the findings of fact about the claimant's age, education, work experience, and RFC are not exactly the same as the corresponding grid in the Medical Vocational Guidelines, the ALJ consults a vocational expert ("VE") to determine whether jobs exist in the national economy that the claimant could perform. 20 C.F.R. § 416.966(e).

Under Medical Vocational Rule 202.14, a claimant who could perform the full range of a light work RFC could justify a finding of "not disabled." Here, the ALJ found that Eastwood retained the RFC to perform light work, but with the additional limitations that Eastwood could only lift twenty pounds occasionally and ten pounds frequently; that he could sit or walk for six hours and sit for six hours in an eight-hour work day; that he could never climb ladders, ropes, or scaffolds; and he could only occasionally balance. Additionally, the ALJ found that Eastwood could never reach overhead with his dominant right hand; that he could use his right hand frequently, but not constantly for purposes of gross manipulation; and that that he was limited to simple, routine, repetitive work. (Tr. 19). Because of these additional limitations to Eastwood's

---

[6] The Court also recognizes that at step five of the analysis, the ALJ provided the VE with a hypothetical of a claimant with Eastwood's limitations except with the ability to only occasionally use his right hand. The VE testified that jobs exist in the national economy for this hypothetical claimant. Therefore, even if the ALJ had not provided enough support for his failure to adopt all of the opinions of Bond and Montoya, remand would likely not change the result of the determination as to this particular issue.

RFC, the ALJ consulted the VE to determine whether jobs existed for an individual with Eastwood's age, education, work experience, and RFC. 20 C.F.R. § 416.966(e).

Eastwood contends that the ALJ's determination that Eastwood could work jobs in the national economy is not supported by substantial evidence because the ALJ failed to account for limitations in concentration, persistence, and pace in his hypothetical to the VE. Eastwood makes this argument despite the fact that the ALJ did not find any limitations of concentration, persistence, and pace in the RFC determination. Without explicitly contesting whether substantial evidence supports an RFC that does not include these limitations, Eastwood asserts that "simple, routine, repetitive work" did not adequately convey the ALJ's findings of limitations in concentration, persistence, and pace. Here, the Court must decide whether the RFC is supported by substantial evidence before it can decide whether the hypothetical to the VE was legally sufficient.

Step five of the disability determination is dependent on the RFC determination. 20 C.F.R. § 404.1520. To reach an RFC determination, the ALJ must include a "narrative discussion describing how the evidence supports each conclusion." SSR 96-8p. The ALJ must demonstrate his reasoning to show how the RFC takes into account the claimant's impairments. *Young*, 362 F.3d at 1002.

In this case, the ALJ articulated the rationale for his determination that Eastwood had moderate limitations in concentration, persistence, and pace. The ALJ noted that Eastwood was in the low average range for visual working memory. The ALJ also mentioned that Eastwood complained about having difficulty processing and remembering information. In the RFC analysis, the ALJ concluded that Eastwood had "moderate limitations in maintaining

concentration, persistence, and pace." (Tr. 23). The ALJ stated that because the RFC limited Eastwood to simple, routine, repetitive work, the RFC accounted for these limitations. The ALJ failed, however, to offer any explanation as to *how* simple, routine, repetitive work would cover Eastwood's moderate limitations in concentration, persistence, and pace.

In *Young*, the Seventh Circuit held that the ALJ could not use "simple, repetitive, low stress work with limited contact with coworkers and the public" to encompass the claimant's mental impairments in temper and social judgment. *Young*, 362 F.3d at 1002. The court reasoned that although the ALJ may have intended to cover all of the claimant's limitations, the ALJ "failed to build the 'accurate and logical bridge from the evidence to his conclusion so that, as a reviewing court, we may assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review.'" Id. (*quoting Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002)). Furthermore, the Seventh Circuit has frequently held that restricting a claimant to "simple" tasks does not adequately address limitations in concentration. *See Stewart v. Astrue*, 561 F.3d 679, 684-85 (7th Cir. 2009); *Craft v. Astrue*, 539 F.3d 668, 677-78 (7th Cir. 2008).

In this case, the ALJ offered no explanation as to how work limited to simple, routine, repetitive work encompassed limitations in concentration, persistence, and pace. Without an explanation, the Court is unable to identify the "logical bridge" the ALJ used to reach his RFC conclusion. Therefore, the Court finds that substantial evidence does not support the ALJ's RFC determination. As a result, this case must be remanded to address the ALJ's shortcomings in the RFC analysis.

In arguing that the hypothetical presented to the VE at the hearing improperly failed to incorporate the ALJ's findings of moderate limitations in concentration, persistence, and pace,

Eastwood relied heavily on *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619–20 (7th Cir. 2010). , Eastwood's argument is premature. First, the Court has already determined that remand is necessary to address shortcomings in the ALJ's RFC determination. Second, a proper hypothetical to a VE at step five hinges on the RFC determination. Therefore, the Court need not review here the hypothetical used by the ALJ because it could change on remand when the Commissioner reconsiders Eastwood's RFC.

### III. CONCLUSION

For the reasons stated above, the Court concludes that the ALJ's decision is not supported by substantial evidence. Therefore, this case is **REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

**SO ORDERED.**

Dated this 21st Day of March, 2014.

S/Christopher A. Nuechterlein
Christopher A. Nuechterlein
United States Magistrate Judge